**E-FILED on**   6/18/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEGAN DEANN ALLEN,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF MONTEREY, ADA SIFUENTES, ANTONIO SIFUENTES, LUCILLE HRALIMA, STEVEN SINOR, KAREN ASHARAH, ELVA MENCIA, MICHELLE CASSILLAS, PAT MANNION, and DOES 1-30, inclusive,<br><br>    Defendants. | No. C-06-07293 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE<br><br>**[Re Docket No. 15]** |

    Defendants County of Monterey, Monterey County sheriff Steven Sinor, and social workers Lucille Hralima, Karen Asharah, Elva Mencia, Michelle Cassillas, and Pat Mannion (collectively, "County Defendants") move to dismiss certain claims in plaintiff Megan Deann Allen's ("Allen") First Amended Complaint ("FAC"). The County Defendants seek to dismiss the second and fifth claims for lack of subject matter jurisdiction, the second, third, and fifth claims for failure to state a claim, and the eighth, ninth, and tenth claims for failure to name a necessary party. In addition, the

ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE—No. C-06-07293 RMW
SPT

County Defendants move pursuant to Fed. R. Civ. P. 12(f) to strike the eighth and tenth claims and certain allegations in the ninth claim. Plaintiff has agreed to dismiss the fourth, fifth and tenth claims[1] and also to dismiss Karen Asharah but otherwise opposes the motions. The court has read the moving and responding papers and considered the argument of counsel. For the reasons set forth below, the court grants in part and denies in part County Defendants' motion to dismiss and grants in part and denies in part County Defendants' motion to strike as follows:

1. Defendants' motion to dismiss the second claim on the basis of lack of subject matter jurisdiction and abstention is denied upon the stipulation that plaintiff's claims concern events prior to the juvenile court's order of detention;

2. Defendants' motion to dismiss the second claim on the basis that it does not state a claim for relief is denied;

3. Defendants' motion to dismiss the third claim on the basis that it does not state a claim for relief is granted without prejudice;

4. Defendants' motion to dismiss the eighth and ninth claims is granted without prejudice;

5. Defendants' motion to strike is granted as to the request for punitive damages against the County based on alleged violations of 42 U.S.C. § 1983 and as to the request for punitive damages for plaintiff's eighth and ninth claims;

6. Defendants' motion to strike is denied in all other respects;

7. Plaintiff's fourth, fifth and tenth claims are dismissed pursuant to plaintiff's stipulation;

8. Defendant Karen Asharah is dismissed from this action pursuant to plaintiff's stipulation; and

9. Plaintiff has thirty (30) days from the date of this order to amend the dismissed claims.

---

[1] These dismissals are per plaintiff's stipulation in the case management conference statement.

# I. BACKGROUND

## A.     Factual Allegations

Allen formerly lived with her mother and step-father. On December 13, 2004, while Allen was shopping with A.A., her ten year old daughter, when A.A. disclosed that Allen's step-father had put on a "dirty movie" and then touched himself and her in "private parts." FAC ¶ 20. Allen immediately drove home, conferred with her sister, and decided to call 911 to report what A.A. had told her. *Id.* ¶ 21. Officers from the Monterey County Sheriff's Department arrived and A.A. relayed the same disclosure to them. *Id.* ¶ 22. Following the officer's advice, Allen took A.A. to the hospital to be examined. *Id.* ¶ 24. Allen agreed with the nurse at the hospital that, due to the allegations, Child Protective Services should be contacted. *Id.* ¶ 25. The medical examination revealed that A.A. had a rash which was likely caused by poor hygiene, and that there was no evidence of sexual assault. *Id.* ¶ 26. Nevertheless, the nurse recommended that A.A. be kept overnight to be further evaluated. *Id.*

The next morning social worker Hralima responded to the call and arrived at the hospital. *Id.* ¶¶ 26-27. When Allen arrived at the hospital the next morning, she was kept in the waiting room and not allowed to see A.A. *Id.* ¶ 27. She later learned that while she was kept waiting, Hralima was questioning A.A. without the presence of a parent or guardian. *Id.* When Allen spoke with Hralima, Hralima agreed that A.A. only had a rash, and that there was no evidence of sexual abuse. *Id.* ¶ 29. However, Hralima informed Allen that A.A. was now on "3-day CPS hold" and would not be released. *Id.* Hralima informed Allen that the hold was necessary in order to do some more investigation. *Id.* ¶ 30-31. Allen discovered after reports filed in the later juvenile dependency proceedings that Hralima claimed A.A. had told her during the interview that her grandparents put tape on her eyes and mouth and made her eat moldy bread. *Id.* ¶ 32. Allen alleges that she is vigilant about protecting her daughter. *Id.* ¶ 34. A year earlier, A.A. had disclosed that Allen's sister's boyfriend touched her in private areas. *Id.* Allen called authorities and moved the next day after the disclosure. *Id.*

With Hralima's assistance, Allen moved out of her parents' house with her other two

ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE—No. C-06-07293 RMW
SPT                                     3

children, N.A. and Jaime. *Id.* ¶¶ 36-38. Some days later Hralima contacted Allen and reported that A.A. was ready to be released to Allen. *Id.* ¶ 39. When Allen arrived at the hospital, Hralima informed Allen that all of her children were being taken into custody because of sexual abuse. *Id.* ¶ 41. With the assistance of sheriff Sinor, Hralima insisted that Allen sign the papers acknowledging notification that her children were being taken into custody. *Id.* ¶ 43. When Allen refused, Sinor threatened to arrest her for sexual abuse and disorderly conduct. *Id.* ¶¶ 43-44. Ultimately, Allen signed the papers. *Id.* ¶ 44. While Hralima was removing the children, she allegedly told Allen that "it's not permanent." *Id.* ¶ 46. Although Allen was not informed of the reasons the children were being removed, other than that it was for sexual abuse, she allegedly overheard Hralima say to Sinor that Allen had "chosen her boyfriend over her children." *Id.* Allen did not discover until she read court reports in the subsequent juvenile court proceedings that her then-boyfriend was a registered sex offender for an incident that occurred thirteen years earlier. *Id.* No warrant had been issued for the removal of the children. *Id.* ¶ 47.

Hralima allegedly then filed reports that Allen had been suspected of drug use. *Id.* ¶ 51. However, according to the complaint, Allen had never even been questioned about drug use. *Id.*

On December 20, 2004 the County filed a juvenile dependency petition and on December 22, 2004 a detention hearing was held. *Id.* ¶ 53. All three children were then removed by court order pursuant to Welf. & Inst. Code § 319 and placed with defendants Ada and Antonio Sifuentes, foster parents. *Id.* ¶ 53. During visits with her children at the Sifuentes' home Allen began repeatedly seeing bruises on her children. *Id.* ¶ 54. Although she complained numerous times, including to County personnel supervising those visits, there was allegedly no responsive measure. *Id.* On a supervised visit with Jaime, Allen noticed injuries all over Jaime's body, including bruises on the forehead, hand marks and an elongated "whip-like" mark on his backside, and a large blackened bruise on his back. *Id.* ¶ 75. Allen showed these injuries to the social worker supervising the visit, but the social worker failed to make any further inquiry or investigation into the injuries. *Id.* ¶¶ 75-78. The children remained in the Sifuentes home.

ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE—No. C-06-07293 RMW
SPT                                              4

On November 27, 2005 Jaime, Allen's two year old boy, was taken to the hospital from the Sifuentes home by paramedics and, within thirty minutes, pronounced dead. *Id.* ¶ 55. The immediate cause of death was acute peritonitis[2] and hemoperitoneum[3] due to blunt force trauma to the abdomen which lacerated the small intestine and the supporting tissues of the bowels causing massive bleeding and infection. *Id.* ¶¶ 56, 59. According to the pathologist, the injury resulted from forceful impact by or against a hard, relatively smooth object, less than about two inches wide. *Id.* ¶ 59. The pathologist also indicated that the injury occurred within the last few days of life. *Id.* Plaintiff alleges that medical treatment was not sought for Jaime for the few days after his injury and paramedics were only summoned moments before his death. *Id.* ¶ 61. He was found lying in the hallway of the Sifuentes home on the morning the paramedics arrived. *Id.* ¶ 62.

In addition to the injuries that were identified as the immediate cause of death, the coroner found that Jaime had several traumatic injuries to his head, face, torso, arms, and legs. *Id.* ¶ 56. He had five abrasions on his head, a subdgaleal hemorrhage, a subdural hemorrhage, and injuries to the back of his head, forehead, eyes, cheeks, mouth, lips, and ears. *Id.* The coroner also identified injuries to Jaime's forearm, knees, shoulder, lower legs, and shins, and found numerous bruises covering a significant portion of his back. *Id.* ¶ 57. There was also a deep scalp abrasion over a crushed area of scalp causing part of his forehead to be concaved inward. *Id.* ¶ 58. The post-mortem examination identified "extensive, recent, unhealed laceration" in the abdominal cavity, colon, and intestines. *Id.* ¶ 60. Sections of perforated small and extensive hemorrhaging were found. *Id.* Plaintiff alleges that Jaime's physical status on the day of his death also indicated that he had been denied adequate nutrition for a lengthy period of time. *Id.* ¶ 64.

Plaintiff alleges that Jaime's injuries are consistent with his being "either punched or kicked in the abdominal area on several occasions over a long period of time, with injuries in various stages

---

[2] Peritonitis refers to inflammation of the smooth transparent serous membrane that lines the cavity of the abdomen. *Merriam-Webster Medical Dictionary* (2002), available at http://www.intelihealth.com/ IH/ihtIH/WSI/9276/9276.html.

[3] Hemoperitoneum refers to bleeding in the abdominal cavity. *Merriam-Webster Medical Dictionary* (2002), available at http://www.intelihealth.com/ IH/ihtIH/WSI/9276/9276.html.

ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE—No. C-06-07293 RMW
SPT                         5

1  of healing found internally." *Id.* ¶ 63.  Plaintiff further alleges that despite these numerous injuries
2  while Jaime has been at the Sifuentes' home, including many visible injuries, no report was ever
3  made by any social workers or by the Sifuentes pursuant to their duties as mandatory reporters.  *Id.* ¶
4  61.  According to the subsequent police investigation of the Sifuentes home, at least eight other
5  juveniles were in the home and a total of eleven individuals lived there in violation of state law for
6  placement of children in foster homes.  *Id.* ¶ 66.  In addition to not reporting the noncompliant
7  overcrowding, social workers allegedly failed to make mandatory monthly visits to the foster home.
8  *Id.* ¶ 68.

9       Social workers also purportedly failed to adequately address reports of child abuse in the
10  Sifuentes home including reports that (1) A.A. being held under water in the bathtub; (2) Jaime
11  being kicked brutally while climbing the stairs; (3) Jaime being whipped by a belt; (4) N.A. being
12  physically beaten and presenting before the social worker with two black eyes and bruising on his
13  forehead; (6) failure to provide adequate food and water to the children; (7) the older children being
14  allowed to punish the younger children; and (8) the children sleeping with the foster parents.  *Id.* ¶¶
15  69-74.

16       On December 11, 2005 Allen gave birth to another baby boy, J.A.  *Id.* ¶ 92.  After forty-eight
17  hours, a nurse removed J.A. from Allen's room and social worker Asharah entered the room and
18  began questioning Allen.  *Id.* ¶ 95.  Asharah then told Allen that she was taking J.A. into custody.
19  *Id.* ¶ 96.

## II. ANALYSIS

21       The County Defendants move to dismiss plaintiff's second claim for lack of subject matter
22  jurisdiction.  They move to dismiss the second and third claims on the basis that immunity bars
23  those claims.  They move to dismiss the eighth and ninth claims for wrongful death on the basis that
24  Jaime's father, a necessary party to the action, must be joined in the action.  Finally, the County
25  Defendants also move to strike the eighth and portions of the ninth claim.

26      **A.**    **Subject Matter Jurisdiction Over Second Claim**

27       The County Defendants interpret the second claim to challenge the detention of A.A., N.A.,

ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED
COMPLAINT AND GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE—No.
C-06-07293 RMW
SPT          6

and Jaime pursuant to the juvenile court proceedings and, therefore, argue that this court lacks subject matter jurisdiction to collaterally attack that state court proceeding under the *Rooker-Feldman* doctrine. Plaintiff agrees that the *Rooker-Feldman* doctrine would bar such a challenge, and clarifies that the second claim challenges the continued detention of the children for the period from the date of removal to the date of the state court proceedings. Thus, she does not challenge the detention pursuant to the court proceedings. Based on plaintiffs' clarification, it does not appear that the *Rooker-Feldman* doctrine is implicated.

Defendants continue to argue that unless plaintiff stipulates to combining the second claim with the first claim which contests the social workers' initial decision to remove the children, that the second and fifth claims seek to collaterally attack the juvenile court proceedings. The court disagrees. The styling of the complaint is largely in the hands of the plaintiff. Here, plaintiff has clarified that the first claim challenges the social workers' decision to remove the children from her. The second claim challenges the social workers' decision to keep the children in custody prior to the filing of a petition with the juvenile court and pending hearing by the juvenile court in violation of Cal. Welf. & Inst. Code § 309. The second claim is not barred by the *Rooker-Feldman* doctrine. Based upon plaintiff's clarification, the County Defendants' motion to dismiss the second claim for lack of subject matter jurisdiction is denied.

**B.     Motion to Dismiss Second and Third Claims**

The County Defendants also move to dismiss the second and third claims on the basis that plaintiff has failed to state a claim under 42 U.S.C. § 1983. Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Plaintiff's second claim alleges a violation of her rights under the Fourteenth Amendment to familial association because defendants Hralima, Mencia, Cassillas, and Mannion kept A.A., N.A., and Jaime in custody without basis prior to the juvenile proceedings. Plaintiff's third claims alleges that the removal of her children constituted a violation of her First Amendment right to freedom of association with her then-boyfriend.

ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE—No. C-06-07293 RMW
SPT                                                           7

### 1. County of Monterey

Defendants argue that plaintiff has failed to allege any County custom, practice, or policy that resulted in the alleged violations of her constitutional rights. "Municipal liability only attaches when the municipality itself causes the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978)). "Pursuant to 42 U.S.C. § 1983, a local government may be liable for constitutional torts committed by its officials according to municipal policy, practice, or custom." *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir. 2000) (citing *Monell*, 436 U.S. at 690-91). Under *Monell*, actions by employees do not create a § 1983 claim against a local government absent a showing that the alleged violation was a result of official policy:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 694. "[W]here a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants . . . such a shortcoming [can] be properly thought of as a city 'policy or custom' that is actionable under § 1983. *City of Canton, Ohio v. Harris*, 489 U.S. at 389.

According to plaintiff's allegations in support of her second claim, the County had a duty to adequately train and educate social workers as to laws governing the conduct of child abuse referral investigations, but "grossly failed in providing adequate training and education in this regard as to result in the kinds of events and circumstances complained of by plaintiff." *Id.* ¶ 10. According to the complaint, this failure to provide adequate training and education "exhibit[s] and constitute[s] deliberate indifference to the rights and safety of the adult residents of the [County], and their children." *Id.* Plaintiff also alleges that the County had a policy of failing to investigate the circumstances leading to the removal of her children in order to determine whether immediate return to a parent is appropriate under Cal. Welf. & Inst. Code § 309. FAC ¶¶ 107-10.

As the Supreme Court noted in *City of Canton, Ohio*, "[i]t may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees." 489 U.S. at 390. However, the Court expressly recognized that the failure to properly train may give rise to § 1983 liability:

> It may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* Here, plaintiff's factual allegations are sufficient to support an inference that the social workers failed to adequately investigate the circumstances of the removal of the children from Allen due to lack of adequate training and supervision. This is so particularly in light of the allegations that Allen reported her daughter's disclosure of abuse immediately, was not the accused abuser, sought medical and social services for her daughter and children, and immediately removed her children away from the home of the accused abuser.

The duties assigned to social workers include a determination of whether to remove a child from her homes or parents. Removal of a child without a warrant or a reasonable belief that the child is in imminent danger of serious bodily injury constitutes a violation of both the parent's and child's constitutional rights:

> The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies. Officials violate this right if they remove a child from the home absent information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury. . . . Officials, including social workers, who remove a child from its [sic] home without a warrant must have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant.

*Rogers v. County of San Joaquin*, ___ F.3d ___, 2007 WL 1531829, *4 (9th Cir. May 29, 2007). As alleged, defendant Hralima did not provide any basis for removing the children from Allen. In light of the duties assigned to social workers, such an omission strongly suggests a lack of proper training

1 and supervision.  Thus, the court finds that plaintiff has alleged sufficient facts as to her second
2 claim against the County.

3       As defendants point out, plaintiff has not alleged any policy, custom, or practice as to third
4 claim that removal of the children constituted a violation of her First Amendment right to associate
5 with her then-boyfriend.  Although Allen overheard Hralima comment that Allen chose her
6 boyfriend, who unknown at the time to Allen was a registered sex offender, over her children, such
7 an allegation is insufficient to sustain a § 1983 claim against the County.  Similarly, it fails against
8 defendant Hralima as there is no allegation that plaintiff's association with her boyfriend was, in fact,
9 impaired.

### 2. Social Workers

11       Plaintiff's second and third claims are also directed at defendants Hralima, Mencia, Cassillas,
12 and Mannion.  Defendants argue that the second and third claims should be dismissed against the
13 social workers as social workers are entitled to absolute immunity in performing quasi-prosecutorial
14 functions related to the initiation and pursuit of child dependency proceedings.  "State actors,
15 including social workers, who perform functions that are 'critical to the judicial process itself' are
16 entitled to absolute immunity."  *Doe v. Lebbos*, 348 F.3d 820, 825 (9th Cir. 2003) (citation omitted).
17 "Beyond those functions historically recognized as absolutely immune at common law, qualified and
18 only qualified immunity exists."  *Id.* (citation and internal quotations omitted).  In determining
19 whether absolute immunity applies, "we look at the nature of the function performed, not the identity
20 of the actor who performed it."  *Id.* (citation and quotations omitted).

21       Defendants rely on *Doe* to support their argument that plaintiff's claims against them are
22 barred by absolute immunity.  However, *Doe* does not support that all of defendants' alleged conduct
23 are entitled to absolute immunity.  In *Doe*, the court held that while the social worker was absolutely
24 immune for failure to adequately investigate the allegations of abuse and neglect against the
25 purported abuse and for fabricating evidence in the dependency proceedings, the court held that the
26 social worker was entitled only to qualified immunity for her actions in maintaining the child outside
27 the accused abuser's custody pending the detention hearing.  *See also Meyers v. Contra Costa*

ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE—No. C-06-07293 RMW
SPT       10

1  *County Dep't Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987) (holding that the social worker's

2  action taken before institution of the juvenile proceedings was not entitled to absolute immunity).

3  Here, as noted in *supra* § A, plaintiff's second claim challenges the social workers' retention of

4  custody over her children without basis prior to the detention hearing before the juvenile court.

5  Thus, the social workers are not entitled to absolute immunity with respect to plaintiff's second

6  claim.

### C. Motion to Dismiss Eighth and Ninth Claims

Defendants move to dismiss plaintiff's eighth and ninth claims for failure to name a necessary party. Defendants argue that under Cal. Code Civ. P. § 377.60, plaintiff has a mandatory duty to join all known omitted heirs in a single action for wrongful death, but plaintiff has failed to name Antonio Mendoza Ceballos ("Ceballos"), Jaime's father, as a party. Plaintiff argues that Ceballos is merely an "alleged" father, was determined to not be entitled to reunification services or custody under California law, and has not been established as Jaime's father via a paternity test. Plaintiff appears to contend that absent discovery resulting in a clear basis for concluding Ceballos is Jaime's father, Ceballos need not be joined pursuant to § 377.60.

Fed. R. Civ. P. 12(b)(7)[4] provides that a claim may be dismissed for failure to join a party under Rule 19. "To find that a person who is not joined is 'indispensable,' the absent person must first be deemed necessary as a 'person to be joined if feasible' under Rule 19(a)(1) and (2)." *Schnabel v. Lui*, 302 F.3d 1023, 1029-30 (9th Cir. 2002). Rule 19(a) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a)(1)-(2).

---

[4]  Although defendants frame their motion under Rule 12(b)(6), their arguments suggest that the motion is more properly a Rule 12(b)(7) motion.

United States District Court
For the Northern District of California

The question the court must consider in a Rule 19(a)(1) analysis is "whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004). Rule 19(a)(2) considers whether the absent party's participation is necessary to protect its legally cognizable interests or to protect existing parties from a significant risk of incurring multiple or inconsistent obligations because of those interests. *See* Fed. R. Civ. P. 19(a)(2)(i) & (ii). If the party is "necessary" pursuant to Rule 19(a) and cannot be joined, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent person being thus regarded as indispensable." *Schnabel*, 302 F.3d at 1029-30; Fed. R. Civ. P. 19(b).

Section 377.60 provides that a wrongful death cause of action can be asserted by, among other parties, the decedent's parents. Thus, under California law, Ceballos has a legally cognizable interest in the alleged wrongful death of Jaime. Although plaintiff contends that Ceballos has not been established as a "parent," plaintiff provides no legal authority that requires an adjudication that an individual is a father for reunification purposes or that a paternity test establishes an individual is the natural father in order for him to be a "parent" under § 377.60 or a necessary party in a wrongful death action. Here, Jaime's birth certificate names Ceballos as his birth father and plaintiff does not assert that Ceballos's name is incorrectly included on the birth certificate. Moreover, Ceballos has already separately filed a wrongful death action in state court. There is nothing indicating Ceballos may not be joined in this action or that joinder of Ceballos would deprive this court of jurisdiction. Under these circumstances, Ceballos is so situated that the disposition of the action in his absence may, as a practical matter, impair or impede his ability to protect his interest or leave defendants subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of Ceballos's legally cognizable interest.

Accordingly, the court dismisses plaintiff's eighth and ninth claims. Plaintiffs may amend those claims to join Ceballos as a party.

ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE—No. C-06-07293 RMW
SPT                                                              12

**D.      Motion to Strike**

Defendants move to strike various claims and portions of plaintiff's complaint pursuant to Fed. R. Civ. P. 12(f). Rule 12(f) provides:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R. Civ. P. 12(f). "Rule 12(f) motions to strike are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation. Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." *White v. Hansen*, 2005 WL 1806367, *14 (N.D. Cal. 2005) (internal quotes and citation omitted).

Defendants move to strike the eighth and portions of the ninth claim in plaintiff's complaint. Plaintiff's eighth claim alleges wrongful death against the County and the social workers based on their negligence in placing Jaime at the Sifuentes' home and for failing to supervise that placement. Plaintiff's ninth claim alleges wrongful death against the Sifuentes, the County, and the social workers for violating Jaime's rights pursuant to state laws protecting children in foster care, including health and safety requirements, provision of food and shelter, proper foster placement, and proper training and certification of foster parents and foster homes.

Defendants argue all or parts of the eighth and ninth claims should be stricken because (1) the claims set forth the same bases for liability and are therefore redundant, (2) the County and social workers are immune from suit for their discretionary acts in the supervision of minors in foster care in the absence of a violation of a mandatory duty, and (3) that plaintiff cites to statutes that do not give rise to a duty or prevent the harm alleged. The court disagrees. As noted above, plaintiff's eighth and ninth claims set forth different theories for their wrongful death allegations. Although there is some overlap of facts and applicable statutes, this does not render the claims redundant. Defendants' claims that they are immune and that plaintiff has not articulated a duty or

1 statute that prevents the harm are not contentions properly raised in a motion to strike. *See* Fed. R.
2 Civ. P. 12(f).

3       Defendants also argue that plaintiff's request for punitive damages in her first through third
4 claims should be stricken because punitive damages are not recoverable against a government entity
5 or against individuals acting in their official capacities under § 1983. The court agrees that punitive
6 damages may not be recovered from the County. *See City of Newport Beach v. Fact Concerts*, 453
7 U.S. 247, 271 (1981) ("we hold that a municipality is immune from punitive damages under 42
8 U.S.C. § 1983"). However, the court declines to strike the request for punitive damages against the
9 individual social worker defendants which, as defendants concede, plaintiff alleges are also sued in
10 their individual capacities. That defendants believe that plaintiff's allegations fail to state a claim
11 against the social workers in their individual capacities or that the claims are not sufficient to give
12 rise to an award of punitive damages is not a proper basis for a motion to strike. *See* Fed. R. Civ. P.
13 12(f).

14       Citing Cal. Code Civ. P. § 377.61, defendants move to strike plaintiff's request for punitive
15 damages for her wrongful death claims on the basis that California's wrongful death statute does not
16 permit recovery of such damages. While a representative or successor-in-interest of a decedent's
17 cause of action may recover, *inter alia*, punitive damages that the decedent would have incurred had
18 he lived, under § 377.61, "[p]unitive damages are not awardable to the heirs on their own cause of
19 action for wrongful death." *Rufo v. Simpson*, 86 Cal. App. 4th 573, 616 (2001). Because a request
20 for punitive damages by Allen in her California wrongful death actions for Jaime's death are barred
21 by § 377.61, such request is immaterial to the present action. Accordingly, the court grants
22 defendants' motion to strike plaintiff's request for punitive damages as to the eighth and ninth claims.

23       Defendants also request that the court strike references to Jaime in plaintiff's first and second
24 claims for wrongful detention as moot. Defendants argue that since Jaime has now died, the court
25 does not have the ability to redress the alleged injuries. The court disagrees. As noted above,
26 plaintiff's allegations of wrongful detention relate to violations of plaintiff's constitutional rights due
27 to the removal and decision to retain custody of her children prior to the juvenile proceedings. It
28

ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE—No. C-06-07293 RMW
SPT                                                   14

represents a past injury suffered and further does not seek redress in the form of returning the children to plaintiff.  Therefore, defendants' motion to strike is denied as to this request.

## III.  ORDER

For the reasons set forth above, the court grants in part and denies in part County Defendants' motion to dismiss and grants in part and denies in part County Defendants' motion to strike as follows:

1. Defendants' motion to dismiss the second claim on the basis of lack of subject matter jurisdiction and abstention is denied upon the stipulation that plaintiff's claims concern events prior to the juvenile court's order of detention;

2. Defendants' motion to dismiss the second claim on the basis that it does not state a claim for relief is denied;

3. Defendants' motion to dismiss the third claim on the basis that it does not state a claim for relief is granted without prejudice;

4. Defendants' motion to dismiss the eighth and ninth claims is granted without prejudice;

5. Defendants' motion to strike is granted as to the request for punitive damages against the County based on alleged violations of 42 U.S.C. § 1983 and as to the request for punitive damages for plaintiff's eighth and ninth claims;

6. Defendants' motion to strike is denied in all other respects;

7. Plaintiff's fourth, fifth and tenth claims are dismissed pursuant to plaintiff's stipulation;

8. Defendant Karen Asharah is dismissed from this action pursuant to plaintiff's stipulation; and

ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE—No. C-06-07293 RMW
SPT                                                                 15

9. Plaintiff has thirty (30) days from the date of this order to amend the dismissed claims.

DATED: 6/18/07

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

| | |
|---|---|
| 1 | **Notice of this document has been electronically sent to:** |
| 2 | **Counsel for Plaintiff:** |
| 3 | Robert Ross Powell            rpowell@rrpassociates.com |
|   | Dennis R. Ingols               dingols@rrpassociates.com |
| 4 | Douglas D. Durward         Doug@durwardlaw.com |

**Counsel for Defendants:**

Elizabeth Mary Kessel          EMKessel@kesselaw.com
Scott Edward Boyer             SEBoyer@kesselaw.com
Alison Yew                     yew@lbbslaw.com
Irene Takahashi                takahashi@lbbslaw.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   6/18/07                          SPT
                                              **Chambers of Judge Whyte**