E-FILED on    10/19/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MEGAN DEANN ALLEN,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>COUNTY OF MONTEREY, ADA SIFUENTES, ANTONIO SIFUENTES, LUCILLE HRALIMA, STEVEN SINOR, ELVA MENCIA, MICHELLE CASSILLAS, PAT MANNION, ANTONIO MENDOZA CEBALLOS and DOES 1-30, inclusive,<br><br>　　　　　Defendants. | No. C-06-07293 RMW<br><br>ORDER DENYING COUNTY DEFENDANTS' MOTION TO REMAND STATE CLAIMS; GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE; DENYING COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; AND DENYING THE SIFUENTESES' MOTION TO DISMISS<br><br>**[Re Docket Nos. 42, 44, 45, 51]** |

　　　　Defendants County of Monterey, social workers Lucille Hralima, Elva Mancilla (erroneously sued as Elva Mencia), Michelle Casilla (erroneously sued as Michelle Cassillas), and Patricia Mannion, and Monterey County sheriff Steven Sinor (collectively, "County Defendants") move to remand certain claims in plaintiff Megan Deann Allen's ("Allen") Second Amended Complaint

("SAC"). Specifically, the County Defendants seek to remand the third, fourth, fifth and sixth claims for lack of supplemental subject matter jurisdiction.[1] As no underlying state civil action exists for this court to remand those claims to, the court interprets the County Defendants' motion as a motion to dismiss for want of subject matter jurisdiction. Defendants Ada Sifuentes and Antonio Sifuentes (collectively, "the Sifuenteses") separately move to dismiss the third, fourth and sixth claims for lack of subject matter jurisdiction. County Defendants and the Sifuenteses separately move to dismiss for failure to join an indispensable party; County Defendants move to dismiss the fifth and sixth claims while the Sifuenteses move to dismiss the third, fourth and sixth. Additionally, County Defendants move to strike certain allegations from the complaint. Allen agrees that certain allegations should be stricken, but otherwise opposes the various motions.

The court has read the moving and responding papers and considered arguments of counsel. For the reasons set forth below, the court denies County Defendants' and the Sifuenteses' motion to dismiss and grants in part and denies in part County Defendants' motion to strike as follows:

1. The motion to strike items 1 to 27 is denied.

2. The motion to strike items 28 and 29 is granted.

## I. BACKGROUND

**A.      Factual Allegations**

**1.      Monterey County Takes Custody of Allen's Children**

This case concerns three children – A.A., N.A., and Jaime Ceballos – all of whom are children of plaintiff Megan Deann Allen. SAC ¶ 5. Allen formerly lived with her mother and step-father. On December 13, 2004, while Allen was shopping with A.A., A.A. disclosed that Allen's step-father had put on a "dirty movie" and then touched himself and her in "private places." *Id.* ¶ 21. Allen drove home, immediately conferred with her sister, and decided to call 911 to report what

---

[1] The court received the County Defendants' requests for judicial notice. The court takes notice of its own order of June 18, 2007 Granting in Part and Denying in Part County Defendants' Motion to Dismiss and Granting in Part and Denying in Part County Defendants' Motion to Strike. The court also takes notice of the complaint filed in *Antonio Ceballos Mendoza v. County of Monterey*, *et al*, M82902 (Monterey Sup. Ct. Jan. 30, 2007).

ORDER DENYING COUNTY DEFENDANTS' MOTION TO REMAND STATE CLAIMS; GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE; DENYING COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; AND DENYING THE SIFUENTESES' MOTION TO DISMISS.
C-06-07293 RMW
TSF                                                    2

A.A. had told her. *Id.* ¶ 22. Officers from the Monterey County Sheriff's Department arrived and A.A. relayed the same disclosure to them. *Id.* ¶ 23. Following the officer's advice, Allen took A.A. to the hospital to be examined. *Id.* ¶ 25. Allen agreed with the nurse at the hospital that, due to the allegations, Child Protective Services ("CPS") should be contacted. *Id.* ¶ 26. The medical examination revealed that A.A. had a rash which was likely caused by poor hygiene, and that there was no evidence of sexual assault. *Id.* ¶ 27. Nevertheless, the nurse recommended that A.A. be kept overnight to be further evaluated and that Allen should return the next morning to meet with CPS. *Id.*

Allen arrived the next morning, but was not allowed to see A.A. while CPS asked A.A. questions. *Id.* ¶ 28. Social worker Lucille Hralima conducted the questioning, and later told Allen that Allen could not take A.A. home because A.A. was now on a "3-day CPS hold." *Id.* ¶¶ 28-30. Hralima informed Allen that the hold was necessary in order to do "a little more investigation." *Id.* ¶ 33. Allen discovered from reports filed in the later juvenile dependency proceedings that Hralima claimed A.A. had told her during the interview that her grandparents put tape on her eyes and mouth and made her eat moldy bread. *Id.* ¶ 34. Allen alleges that she is vigilant about protecting her daughter, and that Hralima never investigated whether A.A.'s statements were true. *Id.* ¶¶ 35-38.

With Hralima's assistance, Allen and her other two children, N.A. and Jaime, immediately moved out of her parents' house to a friend's house and then with Allen's boyfriend to a hotel room provided by social services. *Id.* ¶¶ 39-41. Just after moving to the hotel room, Hralima contacted Allen and reported that A.A. was ready to be released to Allen. *Id.* ¶ 42. When Allen arrived at the hospital, A.A. was not present, and Hralima informed Allen that all of her children were being taken into custody because of sexual abuse. *Id.* ¶ 43. Hralima, accompanied by two police officers including sheriff Sinor, insisted that Allen sign a paper acknowledging notification that her children were being taken into custody. *Id.* ¶¶ 44-46. When Allen refused, Sinor threatened to arrest her for sexual abuse and disorderly conduct. *Id.* ¶¶ 46-48. Ultimately, Allen acceded and signed the papers. *Id.* ¶ 48. While Hralima was removing the children, she allegedly told Allen not to worry because "it's not permanent." *Id.* ¶ 50. Although Allen was not informed of the reasons the children

ORDER DENYING COUNTY DEFENDANTS' MOTION TO REMAND STATE CLAIMS; GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE; DENYING COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; AND DENYING THE SIFUENTESES' MOTION TO DISMISS.
C-06-07293 RMW
TSF                                                              3

were being removed, other than that it was for sexual abuse, she allegedly overheard Hralima say to Sinor that Allen had "chosen her boyfriend over her children." *Id.* Allen did not discover until she read court reports in the subsequent juvenile court proceedings that her then-boyfriend was a registered sex offender for an incident that occurred thirteen years earlier. *Id.* No warrant had been issued for the removal of the children. *Id.* ¶ 47.

Hralima then filed allegedly false reports with the juvenile dependency court stating that Allen had been suspected of drug use. *Id.* ¶ 55. However, Hralima had never even questioned Allen about drug use. *Id.* On December 20, 2004 the County filed a juvenile dependency petition and on December 22, 2004 a detention hearing was held. *Id.* ¶ 58. All three children were then removed by court order pursuant to Cal. Welf. & Inst. Code § 319 and shortly thereafter were placed into foster care with defendants Ada and Antonio Sifuentes. *Id.* ¶ 58.

### 2. Jaime Ceballos Dies in the Sifuentes' Foster Care

Over the next year, Allen went on supervised visits to the Sifuentes' home. *Id.* ¶ 59. Soon after, Allen began seeing bruises on her children repeatedly. *Id.* Although she complained numerous times, including to County personnel supervising those visits, there was allegedly no responsive measure taken. *Id.* On a supervised visit with Jaime, Allen noticed injuries all over Jaime's body, including bruises on the forehead, hand marks and an elongated "whip-like" mark on his backside, and a large blackened bruise on his back. *Id.* ¶ 82. Allen showed these injuries to the social worker supervising the visit, but the social worker failed to make any further inquiry or investigation into the injuries. *Id.* At least seven other times, and from various sources, social workers Mancilla, Casilla, and Mannion received reports of abuse. *Id.* ¶¶ 74-81. These reports informed the social workers that (1) A.A. had been held under water in the bathtub; (2) Jaime had been kicked brutally while climbing the stairs; (3) Jaime had been whipped by a belt; (4) N.A. had been physically beaten and shown to a social worker with two black eyes and bruising on his forehead; (6) the Sifuenteses failed to provide adequate food and water to the children; (7) the older children were allowed to "punish" the younger children; and (8) the children were sleeping with the

foster parents. *Id.* ¶¶ 74. Despite this litany of abuses, Allen's children remained in the Sifuenteses' home.

On November 27, 2005 paramedics took Jaime, Allen's two year old boy, to the hospital from the Sifuenteses' home. *Id.* ¶ 60. Within thirty minutes, Jaime was pronounced dead. *Id.* The immediate cause of death was acute peritonitis[2] and hemoperitoneum[3] due to blunt force trauma to the abdomen which lacerated the small intestine and the supporting tissues of the bowels causing massive bleeding and infection. *Id.* ¶¶ 61, 64. According to the pathologist, the injury resulted from forceful impact by or against a hard, relatively smooth object, less than about two inches wide. *Id.* ¶ 64. The pathologist also indicated that the injury occurred within the last few days of Jaime's life. *Id.* Plaintiff alleges that medical treatment was not sought for Jaime for the few days after his injury and paramedics were only summoned moments before his death. *Id.* ¶ 66. When the paramedics found Jaime, he was not in bed, but was found lying in the hallway of the Sifuentes home. *Id.* ¶ 67.

In addition to the injuries that were identified as the immediate cause of death, the coroner found that Jaime had several traumatic injuries to his head, face, torso, arms, and legs. *Id.* ¶¶ 62, 63. He had five abrasions on his head, a subgaleal hemorrhage, a subdural hemorrhage, and injuries to the back of his head, forehead, eyes, cheeks, mouth, lips, and ears. *Id.* ¶ 61. The coroner also identified injuries to Jaime's forearm, knees, shoulder, lower legs, and shins, and found numerous bruises covering a significant portion of his back. *Id.* ¶ 62. There was also a deep scalp abrasion over a crushed area of scalp causing part of his forehead to be concaved inward. *Id.* ¶ 63. The post-mortem examination identified "extensive, recent, unhealed laceration" in the abdominal cavity, colon, and intestines. *Id.* ¶ 65. Plaintiff alleges that Jaime's physical status on the day of his death also indicated that he had been denied adequate nutrition for a lengthy period of time. *Id.* ¶ 69.

---

[2] Peritonitis refers to inflammation of the smooth transparent serous membrane that lines the cavity of the abdomen. *Merriam-Webster Medical Dictionary* (2002), available at http://www.intelihealth.com/ IH/ihtIH/WSI/9276/9276.html.

[3] Hemoperitoneum refers to bleeding in the abdominal cavity. *Merriam-Webster Medical Dictionary* (2002), available at http://www.intelihealth.com/IH/ihtIH/WSI/9276/9276.html.

ORDER DENYING COUNTY DEFENDANTS' MOTION TO REMAND STATE CLAIMS; GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE; DENYING COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; AND DENYING THE SIFUENTESES' MOTION TO DISMISS.
C-06-07293 RMW
TSF          5

1  Plaintiff alleges that Jaime's injuries are consistent with his being "either punched or kicked in the
2  abdominal area on several occasions over a long period of time, with injuries in various stages of
3  healing found internally."  *Id.* ¶ 68.

4  According to the subsequent police investigation of the Sifuentes' home, at least eight other
5  juveniles were in the home and a total of eleven individuals lived there, violating state law covering
6  placement of children in foster homes.  *Id.* ¶ 71.  In addition to not reporting the overcrowding,
7  social workers allegedly failed to make mandatory monthly visits to the foster home.  *Id.* ¶ 73.

## II.  ANALYSIS

The County Defendants now move to "remand" the third, fourth, fifth and sixth claims for wrongful death to state court.[4]  The court treats this motion as a motion to dismiss for lack of supplementary jurisdiction.  The Sifuenteses likewise moves to dismiss the third, fourth and sixth causes of action. The defendants in essence argue that the federal claims regarding the removal and detention of Allen's three children are separate claims from the four wrongful death claims based upon the treatment and supervision of the children in the foster home following removal. Therefore, defendants claim there is no supplemental jurisdiction over the wrongful death claims.  The County Defendants and the Sifuenteses also move to dismiss the wrongful death claims for failure to join a necessary party.  Finally, the County Defendants move to strike various allegations from the Second Amended Complaint.

### A.     Subject Matter Jurisdiction Under 28 U.S.C. § 1367

#### 1.      "Common Nucleus of Operative Fact"

County Defendants and the Sifuenteses argue that the court lacks subject matter jurisdiction to hear Allen's four wrongful death claims because the court may not exercise supplemental

---

[4]  County Defendants begin their motion citing to 28 U.S.C. § 1443(c), a section that does not exist.  Based on the quotation supplied, the court believes that County Defendants intended to cite 28 U.S.C. § 1447(c).  In any event, the court may only remand cases that have been removed from state court.  *See* 28 U.S.C. § 1447(a).  As this case was filed in federal court, there is no underlying state proceeding to receive a remanded case.  Based on the remainder of the County Defendants' arguments, the court treats its motion to remand as a motion to dismiss for lack of subject matter jurisdiction over Allen's state law claims.

ORDER DENYING COUNTY DEFENDANTS' MOTION TO REMAND STATE CLAIMS; GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE; DENYING COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; AND DENYING THE SIFUENTESES' MOTION TO DISMISS.
C-06-07293 RMW
TSF                                                                6

**United States District Court**
For the Northern District of California

jurisdiction over state law claims where the claims do not form the "same case or controversy under Article III." 28 U.S.C. § 1367(a). A state claim is part of the same "case" as a federal claim where the claims "'derive from a common nucleus of operative fact' and are such that a 'plaintiff would be expected to try them in one judicial proceeding.'" *Trustees of the Constr. Indus. and Laborers Health and Welf. Trust v. Desert Valley Landscape & Maintenance, Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). In general, a "loose factual connection" between the claims suffices for the claims to be considered one "case" under Article III. *See Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995).

In *Ammerman*, the plaintiff asserted state law assault and battery claims against a co-worker and a claim under Title VII against her employer on the basis of the employer's refusal to pursue remedial measures following the alleged sexual assault. *Id.* The court found that the two claims formed a constitutional "case" because the facts surrounding the assault informed the reasonableness of the university's response that led to the Title VII claim. On the other hand, no "common nucleus" existed in *Lyon v. Whisman*, 45 F.3d 758 (3d Cir. 1995) or *Soliday v. Miami County, Ohio*, 55 F.3d 1158 (6th Cir. 1995). In *Lyon*, the Third Circuit found no "common nucleus" between a Fair Labor Standards Act claim for overtime pay and a breach of contract action for failure to pay a bonus. *Lyon*, 45 F.3d at 759. In explaining its decision, the court stressed that no "common nucleus" exists where the "state claims [are] totally unrelated to a cause of action under federal law," but also noted that a "common nucleus" does exist where a "critical background fact . . . is common to all the claims." *Id.* at 760-61. The Third Circuit further noted that the court must dismiss state claims where the federal and state claims "are separately maintainable and determinable without any reference to the facts alleged or stated in or with regard to the other count." *Lyon*, 45 F.3d at 763. Another illustration of this principle comes from *Soliday*, where the Sixth Circuit found no "common nucleus" between a federal claim against jail employees for deliberate indifference to the health of an inmate and a state claim against the coroner for violating provisions regarding handling bodies. *Soliday*, 55 F.3d at 1165.

The touchstone of whether there is a "common nucleus" between two claims under *Gibbs* is

ORDER DENYING COUNTY DEFENDANTS' MOTION TO REMAND STATE CLAIMS; GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE; DENYING COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; AND DENYING THE SIFUENTESES' MOTION TO DISMISS.
C-06-07293 RMW
TSF                                                                 7

whether a plaintiff would be expected to try the two claims together. In *Ammerman*, the factual circumstances surrounding the state claim informed the federal claim and a plaintiff would have to explain the facts behind one for the jury to understand the other. In *Lyon* and *Soliday*, the circumstances surrounding the state claims were not relevant to presenting the federal claims and *vice versa*. The present case involves an alleged series of events implicating how the County of Monterey oversees child welfare. County Defendants note that Allen states in her opposition that the two sets of claims are "starkly different." County Defendants misconstrue Allen's statement. While the legal theories underlying the two sets of claims are starkly different, the factual underpinnings of each set of claims are relevant to each other. Both sets of claims implicate the practices and procedures of Monterey County in how it investigates abuse, reports abuse and responds to allegations of abuse, and the alleged facts underlying the County's failures in December 2004 when Allen's children were removed are relevant to the County's alleged failures throughout 2005. The Sifuenteses argue that no "common nucleus" exists because the events underlying the federal claims took place in December 2004 while the events underlying the state claims took place during 2005. The Sifuenteses correctly point out that the events did not overlap, but cannot deny that the December 2004 events resulting in the children's removal are factually connected and relevant to the events culminating in Jaime's death in their care in 2005. But for the removal of the children, they would not have been placed in the Sifuenteses' care. Because the critical background of how the County of Monterey oversees its child welfare operations is relevant to each set of claims, one would expect to try the claims together, and therefore the claims form one constitutional case under Article III, and therefore satisfy section 1367(a).

### 2. Discretion

County Defendants and the Sifuenteses also argue that the court should exercise its discretion to decline jurisdiction over the wrongful death claims. Section 1367(c) restricts the court's discretion to decline supplemental jurisdiction, permitting it only under certain statutory conditions. *See Executive Software N. Am., Inc. v. U.S. Dist. Court for the Central Dist. of Calif.*, 24 F.3d 1545, 1555-56 (9th Cir. 1994). County Defendants and the Sifuenteses invoke section 1367(c)(2), arguing

ORDER DENYING COUNTY DEFENDANTS' MOTION TO REMAND STATE CLAIMS; GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE; DENYING COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; AND DENYING THE SIFUENTESES' MOTION TO DISMISS.
C-06-07293 RMW
TSF  8

that the state wrongful death claims substantially predominate over the section 1983 claims over which this court has original jurisdiction. Non-federal claims only "substantially predominate" where litigating them in federal court "can accurately be described as allowing a federal tail to wag what is in substance a state dog." *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003). This case presents two serious sets of claims, neither one of which "substantially" outweighs the other. Even if the statutory condition of "substantial predomination" were triggered here, the court would still have to weigh the "economy, convenience, fairness, and comity" of declining supplemental jurisdiction. *Executive Software*, 24 F.3d at 1557. The claims in this case share a factual background, and splitting the claims would not serve economy or convenience. Nor would it be fair to deprive plaintiff of her choice of forum. While respect for comity counsels in favor of allowing a state court to determine Allen's wrongful death claims, no party has suggested that the claims present novel or complex issues of state law.

County Defendants also argue that the court should decline supplemental jurisdiction under 1367(c)(4) because "other compelling reasons" like "confusion of issues, prejudice to County defendants and judicial economy" warrant dismissal. The Ninth Circuit held in *Executive Software* that "the bases for declining jurisdiction should be extended beyond the circumstances identified in subsections (c)(1)-(3) only if the circumstances are quite unusual." *Id.* at 1557-58. The Ninth Circuit also emphasized that (c)(4) may be invoked only in "exceptional circumstances." *Id.* While heartbreaking, the issues raised in Allen's complaint are not exceptionally confusing. County Defendants suggest that maintaining the state law claims in federal court exceptionally prejudices them, but County Defendants do not explain why. Nor do County Defendants explain how judicial economy would be exceptionally enhanced by dismissing Allen's wrongful death claims. Accordingly, the court finds that no "exceptional circumstance" exists to justify declining supplemental jurisdiction over Allen's wrongful death claims and denies County Defendants' and the Sifuenteses' motion to dismiss for lack of subject matter jurisdiction.

### B.   Failure to Join a Necessary Party

The court's June 18, 2007 order dismissed the wrongful death claims for failure to join

ORDER DENYING COUNTY DEFENDANTS' MOTION TO REMAND STATE CLAIMS; GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE; DENYING COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; AND DENYING THE SIFUENTESES' MOTION TO DISMISS.
C-06-07293 RMW
TSF                                              9

Antonio Mendoza Ceballos, the father of Jaime. In filing her second amended complaint, Allen has added Ceballos as a "nominal defendant." SAC ¶ 18. No cause of action, however, lists Ceballos as a defendant. County Defendants and the Sifuenteses argue that Allen's failure to allege any causes of action against Ceballos compels dismissing the wrongful death claims for failure to join a necessary party.

Defendants' argument strains credibility. California law requires joining Ceballos because he has a legally cognizable interest in the alleged wrongful death of Jaime as Jaime's father. His legal interest – as a plaintiff – required the previous dismissal of the wrongful death claims. He has now been named as a nominal defendant and received notice of this action. *See* Waiver of Service, Docket No. 61. Nothing more is required. *See* Fed. R. Civ. P. 19(a) ("If the person should join as a plaintiff, but refuses to do so, the person may be made a defendant, or in a proper case, an involuntary plaintiff."); *see also Ruttenberg v. Ruttenberg*, 53 Cal. App. 4th 801, 807-808 (1997) (requiring only "that all heirs are before the court in the same action"). To dismiss Allen's wrongful death claims for failing to list Ceballos' name under the heading of each wrongful death claim would not promote the just, speedy, and inexpensive determination of this action. Accordingly, the court denies the motions to dismiss on these grounds.

### C. Motion to Strike

County Defendants also move to strike twenty nine (29) allegations from Allen's Second Amended Complaint. These allegations can be divided into two groups: additional allegations and punitive damages allegations. The court deals with the second group of allegations first.

The court's June 18, 2007 order granted a motion to strike all punitive damages allegations against the County. Allen concedes that item 28, a punitive damages allegation against the County, should be stricken and apologizes for including it in the Second Amended Complaint. The court therefore orders Item 28 stricken.

Items 25, 26, and 27 stem from paragraph 102 of the complaint, reproduced below with added emphasis:

ORDER DENYING COUNTY DEFENDANTS' MOTION TO REMAND STATE CLAIMS; GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE; DENYING COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; AND DENYING THE SIFUENTESES' MOTION TO DISMISS.
C-06-07293 RMW
TSF                                                              10

> Further, the actions of individual defendants were malicious, oppressive, shocking to the conscience of the reasonable person, and despicable in the extreme, and as such, entitle plaintiff to an award of punitive damages for the sake of example and by way of punishing *the defendants*. The defendant supervisors are guilty of fraud, malice and oppression in that they authorized and/or ratified the conduct complained of herein, and/or conspired in the acts and omissions complained of herein.

County Defendants argue that the reference to "the defendants" refers to all defendants, and not just individual defendants. County Defendants misread paragraph 102, which is limited only to individual defendants. As there is nothing improper about Allen's pleading punitive damages against the individual defendants, the court denies County Defendants' motion to strike items 25, 26, and 27.

The County Defendants also move to strike the phrase "and agency/entity defendants" from the prayer for relief requesting punitive damages. The prayer for relief for punitive damages is alleged against "the individual defendants and agency/entity defendants as applicable." Punitive damages are not applicable to the agency/entity defendants in this case. Because there is no reason to include the "agency/entity defendants" in this paragraph of the prayer for relief, the court orders Item 29 stricken.

The County Defendants' motion to strike the other twenty four designated allegations borders on frivolous. The court's June 18, 2007 order gave Allen thirty days "to amend the dismissed claims." Allen filed a second amended complaint, which added various factual allegations to the complaint. It did not add any new claims. County Defendants move to strike these additional allegations because they exceed the scope of Allen's permission to amend her claims. County Defendants' emphatic argument ("These [allegations] were added <u>without leave of court</u>.") does not mention how these additional allegations prejudice them. Nor does the court believe that plaintiff has "subver[ted] jusice through a sleight of hand." The court's order granting leave to "amend the dismissed claims" could fairly be interpreted to include leave to add factual allegations that bolster the dismissed claims. The court therefore denies the motion to strike items 1 through 24.

### III.  ORDER

ORDER DENYING COUNTY DEFENDANTS' MOTION TO REMAND STATE CLAIMS; GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE; DENYING COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; AND DENYING THE SIFUENTESES' MOTION TO DISMISS.
C-06-07293 RMW
TSF                                                                                              11

For the reasons set forth above, the court denies County Defendants' and the Sifuenteses' motions to dismiss and the County Defendants' motion to remand. The court grants in part and denies in part County Defendants' motion to strike as follows:

1. The motion to strike items 1 to 27 is denied.
2. The motion to strike items 28 and 29 is granted.

DATED:     10/19/07

*Ronald M Whyte*

RONALD M. WHYTE
United States District Judge

ORDER DENYING COUNTY DEFENDANTS' MOTION TO REMAND STATE CLAIMS; GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE; DENYING COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; AND DENYING THE SIFUENTESES' MOTION TO DISMISS.
C-06-07293 RMW
TSF                                                                 12

Case 5:06-cv-07293-RMW    Document 64    Filed 10/19/07    Page 13 of 13

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

| | |
|---|---|
| Robert Ross Powell | rpowell@rrpassociates.com |
| Dennis R. Ingols | dingols@rrpassociates.com |
| Douglas D. Durward | Doug@durwardlaw.com |

**Counsel for Defendants:**

| | |
|---|---|
| Elizabeth Mary Kessel | EMKessel@kesselaw.com |
| Scott Edward Boyer | SEBoyer@kesselaw.com |
| Alison Yew | yew@lbbslaw.com |
| Irene Takahashi | takahashi@lbbslaw.com |

**Notice of this document has been mailed to:**

Douglas Tsuchiya

341 Capitol Street, #1

Salinas, CA. 93901

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     10/19/07                                             TSF
                                                          **Chambers of Judge Whyte**

ORDER DENYING COUNTY DEFENDANTS' MOTION TO REMAND STATE CLAIMS; GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO STRIKE; DENYING COUNTY DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; AND DENYING THE SIFUENTESES' MOTION TO DISMISS.
C-06-07293 RMW
TSF                                                                             13